**H1 LAW GROUP**
Jill Garcia, NV Bar No. 7805
jill@h1lawgroup.com
701 N. Green Valley Parkway, Suite 200
Henderson NV 89074
Phone   702-608-3720
Fax       702-703-1063

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JENNIFER CAMPAGNA, an individual,<br><br>                              Plaintiff,<br><br>       vs.<br><br>ARROWEYE SOLUTIONS, INC., a Delaware corporation; GINA CIAMPAGLIO, an individual; MICA MOSELEY, an individual; DOES I through X, inclusive; and ROE BUSINESS ENTITIES, I through X, inclusive,<br><br>                              Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Jennifer Campagna ("Plaintiff"), by and through her undersigned counsel, as and for her Complaint against Defendants Arroweye Solutions, Inc. ("Arroweye"), Gina Ciampaglio, and Mica Moseley (collectively "Defendants") states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.       Plaintiff Jennifer Campagna is an individual residing in Henderson, Nevada, and a qualified/eligible employee of Defendant Arroweye within the meaning of the Family Medical Leave Act (29 U.S.C. § 2601 *et seq.*) ("FMLA").

2.       Defendant Arroweye Solutions, Inc. ("Arroweye") is and was at all relevant times hereto, a limited liability company organized under the laws of the State of Delaware, with a principal place of business located in Henderson, Nevada.

3.       Defendant Arroweye employs 50 or more employees and is an "employer" within the meaning of FMLA.

1

4. Defendant Gina Ciampaglio, an individual residing in Las Vegas, Nevada, is the Corporate Director of Human Resources at Arroweye. At all times mentioned herein, Ms. Ciampaglio was responsible for the acts described while acting in her capacity as Corporate Director of Human Resources and executive at Arroweye.

5. Defendant Mica Moseley, an individual residing in Salt Lake City, Utah, is the Senior Vice President of Sales and Business Development at Arroweye. At all times mentioned herein, Mr. Moseley was responsible for the acts described while acting in his capacity as Senior Vice President of Sales and Business Development and executive at Arroweye.

6. All of the acts and/or failures to act alleged herein were duly performed by and/or are attributable to Defendants, individually or acting by and through their agents and employees. Said acts and/or failures to act were within the scope of any agency or employment or were ratified by Defendants.

7. The names and capacities, whether individual, corporate, associate or otherwise, of Defendants and/or their alter egos sued herein as DOES I through X, and ROE Business Entities I through X, inclusive, are presently unknown, and Plaintiff therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names of any and all Doe and Roe defendants as alleged herein and/or after their true names and capacities are ascertained.

8. This Court has general personal jurisdiction over Mr. Moseley because he has substantial and/or continuous and systematic contacts with this forum in that he supervised and directed the day-to-day operations of Mrs. Campagna's job at Arroweye in Henderson, Nevada.

9. This Court has specific personal jurisdiction over Mr. Moseley because he purposefully availed himself of this forum and/or enjoyed the protection of the laws of this forum, as well as purposefully established contacts with this forum and affirmatively directed his conduct toward this forum, when he supervised and directed the day-to-day operations of Mrs. Campagna's job at Arroweye in Henderson, Nevada.

10. This Court also has specific personal jurisdiction over Mr. Moseley because the cause of action arises from his purposeful contact with this forum, in other words his actions and/or failures to act related to Mrs. Campagna's job at Arroweye in Henderson, Nevada.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Mrs. Campagna is making a claim under the FMLA.

12. This Court has supplemental jurisdiction over Mrs. Campagna's state law claims under 28 U.S.C. § 1367 because those claims form the same case and controversy as her FMLA claim.

13. This Court has jurisdiction over this matter.

14. Venue is proper in this district because one or more of the Defendants reside within this district and because the actions of Defendants at issue took place within the district.

## GENERAL ALLEGATIONS

15. Mrs. Campagna incorporates by reference all preceding allegations set forth in the Complaint as if fully stated herein.

16. Mrs. Campagna has qualified for leave under the FMLA for at least two years preceding her termination from employment. Arroweye was aware of the extent and nature of Mrs. Campagna's reasons for leave under the FMLA.

17. As described below, Arroweye failed to comply with its obligations under FMLA by refusing to return Mrs. Campagna to her position following her use of FMLA leave, refusing to let her work from home during the global COVID-19 pandemic, and then forcing her to resign.

*Mrs. Campagna is an Outstanding Employee of Arroweye*

18. On October 31, 2017, Mrs. Campagna was hired at Arroweye as a Client Services Specialist.

19. At that time, Mr. Moseley was the Vice President over Mrs. Campagna's position, setting the ultimate direction of her duties and operations.

3

20. While employed as a Client Services Specialist, Arroweye and Mr. Moseley recognized Mrs. Campagna's outstanding job performance, and Mrs. Campagna received multiple pay raises in this position.

21. Further recognizing her talents, in 2019, Arroweye and Mr. Moseley promoted Mrs. Campagna to a dual role, Client Services Specialist and Marketing Coordinator.

22. After this promotion, Mr. Moseley became Mrs. Campagna's direct supervisor, directing her day-to-day duties and operations.

23. Mrs. Campagna's outstanding job performance continued and, in January 2020, Arroweye and Mr. Moseley again promoted her to a full-time Marketing Coordinator, where she earned an annual salary of $65,000 per year.

24. In sum, for the last three years, Mrs. Campagna excelled in her positions at Arroweye and had a stellar employment record at the company.

***Mrs. Campagna Takes Short Term Disability and FMLA Leave Due to Her Pregnancy and the Premature Birth of Her Twins***

25. On or around May 28, 2020, Mrs. Campagna applied for short term disability, as she was pregnant with twins and placed on partial bed rest by her doctor.

26. Once she became medically unable to work due to her high-risk pregnancy, Mrs. Campagna requested leave under the FMLA.

27. Upon information and belief, Ms. Ciampaglio reviewed Mrs. Campagna's FMLA paperwork to determine its adequacy.

28. Upon information and belief, Ms. Ciampaglio approved Mrs. Campagna's FMLA leave.

29. Only days after Mrs. Campagna delivered her premature babies and while they were still staying in a medically mandated neonatal intensive care unit ("NICU"), Arroweye, through Mr. Moseley, contacted Mrs. Campagna to inform her they were temporarily outsourcing her role.

30. Arroweye, through Mr. Moseley, then required Mrs. Campagna (who was on FMLA leave) to spend several hours working to provide them with passwords related to her position.

31. Mrs. Campagna's newborn premature babies were in the NICU for about four weeks. After only a week of Mrs. Campagna's babies being brought home, Ms. Ciampaglio, informed Mrs. Campagna, with only days left on her FMLA leave, that Arroweye was eliminating her position.

32. In order for Mrs. Campagna to receive extended, non-paid FMLA leave, Ms. Ciampaglio informed Mrs. Campagna that Arroweye required her to take a demotion.

33. Ms. Ciampaglio stated, in conversations and a letter dated August 11, 2020, that Arroweye would offer Mrs. Campagna the demoted position of Client Service Specialist (despite Mrs. Campagna's stellar job performance and hard work over the last three years to get promoted to a full-time Marketing Coordinator).

34. Arroweye also docked Mrs. Campagna's pay to $27.00 per hour.

35. This was almost $10,000 less per year than her salary before she took FMLA leave.

36. Mrs. Campagna had premature newborn babies to support and desperately needed health insurance.

37. Defendants knew of this and took advantage of Mrs. Campagna's medical and family situation.

38. Mrs. Campagna had no choice but to accept the demotion offered by Arroweye through Ms. Ciampaglio, which she did on August 17, 2020.

39. After Mrs. Campagna returned to work from her FMLA leave, Defendants refused to provide her with access to a private space to pump breast milk.

40. Moreover, due to the COVID-19 global pandemic, and the high risk of death or grave illness it posed to Mrs. Campagna's premature newborn babies, Mrs. Campagna needed to work from home.

41. There was nothing about Mrs. Campagna's position (either her original position or demoted one) that precluded her from working from home.

42. In fact, prior to Mrs. Campagna's FMLA leave, Defendants allowed her to work from home. Mrs. Campagna worked from home from approximately March 2020 to on or around May 28, 2020.

43. However, Defendants refused to let Mrs. Campagna work from home after returning from her FMLA leave, even though others in the same or similar positions, including interdepartmental transfers and closely aligned other positions, were allowed to do so.

44. Due to this unworkable situation, Defendants forced a constructive discharge onto Mrs. Campagna, and she was forced to resign on September 28, 2020.

45. While Mrs. Campagna has attempted to mitigate her damages, being constructively discharged during this global pandemic has required her to take a position at a significantly lower rate of pay.

## CAUSES OF ACTION

### COUNT I – Violations of the FMLA

**(All Defendants)**

46. Mrs. Campagna incorporates by reference all preceding allegations set forth in the Complaint as if fully stated herein.

47. Under the FMLA, Mrs. Campagna was "entitled to a total of 12 work weeks of leave during any 12-month period" for her pregnancy and the birth of her premature babies. 29 U.S.C. § 2612(a)(1).

48. Further, under 29 U.S.C. § 2614(a)(1):

[A]ny eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave—

(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or

(B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

49. Two claims for recovery are available under the FMLA: an interference/denial of rights claim and a discrimination or retaliation claim.

50. For the first claim, the FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

51. For the second claim, an employer is further prohibited from discriminating or retaliating against an employee for having exercised or attempted to exercise any FMLA right. *Id.* § 2515(a)(2).

52. Defendants violated the FMLA when they set out to interfere with Mrs. Campagna's attempt to exercise her right to leave when they required her to work during her leave and to accept a demotion in order to receive extended, non-paid FMLA leave.

53. Defendants unlawfully discriminated against Mrs. Campagna in violation of the FMLA when they did not restore Mrs. Campagna to her position as Marketing Coordinator making $65,000 per year, but instead demoted her to a Client Service Specialist with significantly less pay just days before the end of her FMLA leave.

54. Defendants further unlawfully discriminated against Mrs. Campagna in violation of the FMLA when they did not allow Mrs. Campagna to work from home even though others in the same or a similar position were allowed to do so.

55. In fact, Defendants' prohibition against Mrs. Campagna working from home was merely a pretext to target Mrs. Campagna and punish her for taking short term disability leave and leave under the FMLA, in the hopes they could force her to resign.

56. Mrs. Campagna's exercise of her right to take leave from work as authorized by the FMLA was either the sole or a motivating factor for Defendants' decision to force a constructive discharge onto Mrs. Campagna.

57. Defendants further retaliated against Mrs. Campagna for using her leave by constructively forcing her to resign.

58. Ms. Ciampaglio and Mr. Moseley are individually liable for violating Mrs. Campagna's rights under the FMLA.

59. Ms. Ciampaglio is individually liable for the FMLA violations described above because, upon information and belief, she is the Corporate Director of Human Resources at Arroweye, she reviewed Mrs. Campagna's FMLA paperwork and determined its adequacy, she controlled Mrs. Campagna's ability to return to work and under what conditions, and she sent Mrs. Campagna nearly every communication regarding her leave and employment. Arroweye failed to adequately supervise, control, discipline or otherwise penalize the conduct, acts, and failures of its employees and thereby ratified these wrongful actions.

60. Mr. Moseley is also individually liable for the FMLA violations described above because, upon information and belief, he is the Senior Vice President of Sales and Business Development at Arroweye, he was Mrs. Campagna's direct supervisor who managed her day-to-day duties and operations, he (in concert with Ms. Ciampaglio) refused to let Mrs. Campagna return to work in a same or similar position, and he (in concert with Ms. Ciampaglio) refused to let her work from home even though other employees in the same or similar position were allowed to do so. Arroweye failed to adequately supervise, control, discipline or otherwise penalize the conduct, acts, and failures of its employees and thereby ratified these wrongful actions.

61. Mrs. Campagna has sustained extensive economic loss as a result of her wrongful constructive termination.

62. Given Defendants' retaliation, discrimination, and wrongful constructive termination, Mrs. Campagna has suffered damages including lost wages (including back pay and front pay), lost employment, lost benefits, lost earning capacity, lost opportunities, liquidated damages, emotional pain and suffering, inconvenience, mental anguish, and lost enjoyment of life in an amount to be proven at trial.

63. Defendants intentionally, voluntarily, deliberately, and willfully retaliated, discriminated, and constructively terminated Mrs. Campagna, and such actions were intentional, willful, malicious, and/or done with reckless disregard for Mrs. Campagna's protected rights.

64. Due to Defendants' violations of the FMLA, Mrs. Campagna was forced to bring this action and is entitled to recover her attorney's fees and costs.

65. Further, Defendants violated the FMLA with an intent to injure Mrs. Campagna or with a conscious disregard of her rights.

66. Defendants' violations of the FMLA constitute despicable conduct that subjected Mrs. Campagna to cruel and unjust hardship with a conscious disregard of her rights.

67. Mrs. Campagna requests relief as described in the Prayer for Relief below.

**COUNT II– Violations of Nevada Pregnant Worker's Fairness Act**

**(Arroweye)**

68. Mrs. Campagna incorporates by reference all preceding allegations set forth in the Complaint as if fully stated herein.

69. Under the Nevada Pregnant Worker's Fairness Act,

> If a female employee requests an accommodation for a condition of the employee relating to pregnancy, childbirth or a related medical condition, the employer and employee **must** engage in a timely, good faith and interactive process **to determine an effective, reasonable accommodation for the employee**. An accommodation may consist of a change in the work environment or in the way things are customarily carried out that allows the employee to have equal employment opportunities, including the ability to perform the essential function of the position and to have benefits and privileges of employment **that are equal to those available to other employees**.

NRS 613.4371(1) (emphasis added).

70. Also, under the Nevada Pregnant Worker's Fairness Act,

> [I]t is an unlawful employment practice for an employer to:
>
> (a) **Refuse to provide a reasonable accommodation to a female employee** or applicant for employment upon request of the employee or applicant, as applicable, for a condition of the employee or applicant relating to pregnancy, childbirth or a related medical condition…;
>
> (b) **Take an adverse employment action against a female employee because the employee requests or uses a reasonable accommodation** for a condition of the employee relating to pregnancy, childbirth or a related medical condition which may include, without limitation, refusing to promote the employee, requiring the employee to transfer to another position, **refusing to reinstate the employee to the same or an equivalent position upon return to work** or taking any other action which affects the terms or conditions of employment in a manner which is not desired by the employee;
>
> (c) **Deny an employment opportunity to an otherwise qualified female employee** or applicant for employment based on the need of the employee or applicant, as applicable, for a reasonable accommodation for a



H1 LAW GROUP
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

9

        condition of the employee or applicant relating to pregnancy, childbirth or a related medical condition….

NRS 613.438 (emphasis added).

71.    Arroweye failed to provide reasonable accommodations to Mrs. Campagna, took an adverse employment action against her, and denied her employment opportunities in violation of the Nevada Pregnant Worker's Fairness Act when, only days before the end of her FMLA leave, Arroweye required Mrs. Campagna to be demoted to a Client Service Specialist with significantly less pay.

72.    Arroweye failed to provide reasonable accommodations to Mrs. Campagna, took an adverse employment action against her, and denied her employment opportunities in violation of the Nevada Pregnant Worker's Fairness Act when it refused to provide Mrs. Campagna a private space to pump breast milk.

73.    Arroweye failed to provide reasonable accommodations to Mrs. Campagna, took an adverse employment action against her, and denied her employment opportunities in violation of the Nevada Pregnant Worker's Fairness Act, when it refused to allow Mrs. Campagna to work from home during the global COVID-19 pandemic, even though others in the same or similar position were allowed to work from home.

74.    In fact, Arroweye's prohibition against Mrs. Campagna working from home was merely a pretext to target Mrs. Campagna and punish her for taking short term disability leave and leave under the FMLA, in the hopes it could force her to resign.

75.    Mrs. Campagna has sustained extensive economic loss as a result of her wrongful constructive termination.

76.    Given Arroweye's retaliation and wrongful constructive termination, Mrs. Campagna has suffered damages including lost wages (including back pay and front pay), lost employment, lost benefits, lost earning capacity, lost opportunities, liquidated damages, emotional pain and suffering, inconvenience, mental anguish, and lost enjoyment of life in an amount to be proven at trial.




H1 Law Group
701 N. Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Tel: 702-608-3720

77. Arroweye intentionally, voluntarily, deliberately, and willfully discriminated, retaliated, and constructively discharged Mrs. Campagna, and such actions were intentional, willful, malicious, and/or done with reckless disregard for Mrs. Campagna's protected rights.

78. Due to Arroweye's violations of the Nevada Pregnant Worker's Fairness Act, Mrs. Campagna was forced to bring this action and is entitled to recover her attorney's fees and costs.

79. Further, Arroweye violated the Nevada Pregnant Worker's Fairness Act with an intent to injure Mrs. Campagna or with a conscious disregard of her rights.

80. Arroweye's violations of the Nevada Pregnant Worker's Fairness Act also constitute despicable conduct that subjected Mrs. Campagna to cruel and unjust hardship with a conscious disregard of her rights.

81. Mrs. Campagna requests relief as described in the Prayer for Relief below.

### COUNT III–Intentional Infliction of Emotional Distress

### (All Defendants)

82. Mrs. Campagna incorporates by reference all preceding allegations set forth in the Complaint as if fully stated herein.

83. Defendants' conduct was extreme and outrageous when they eliminated Mrs. Campagna's position while on FMLA leave.

84. Defendants' conduct was extreme and outrageous when they forced her to take a demoted position while still on FMLA leave and in order to extend her FMLA leave.

85. Defendants' conduct was extreme and outrageous when they eliminated her position and forced her to take a demoted position while on FMLA leave despite her having a stellar employment record at Arroweye and while she was experiencing the significant medical conditions of a high-risk pregnancy and the premature birth of her twin babies, who were medically required to stay in a NICU.

86. Defendants' conduct was extreme and outrageous when they threatened Mrs. Campagna's health insurance and job, knowing she had premature newborn babies to support, and forced her to take a demoted position at Arroweye.

87. Defendants' conduct was extreme and outrageous when they refused to let Mrs. Campagna work from home during the global COVID-19 pandemic, even though (1) others in the same or similar positions were working from home, (2) nothing in Mrs. Campagna's original or demoted position precluded her from working at home, (3) Mrs. Campagna had, in fact, worked from home prior to taking FMLA leave, and (4) Defendants knew she had premature newborn babies at risk from the global pandemic.

88. Defendants intended to cause emotional distress to Mrs. Campagna or acted with reckless disregard of causing her emotional distress.

89. Mrs. Campagna suffered severe or extreme emotional distress as a result of Defendants' conduct including, but not limited to, severe or extreme emotional pain and suffering, inconvenience, mental anguish, and lost enjoyment of life.

90. Defendants' actions and/or omissions were taken with an intent to injure Mrs. Campagna or with a conscious disregard of her rights or safety.

91. Defendants' acts also constitute despicable conduct that subjected Mrs. Campagna to cruel and unjust hardship with a conscious disregard of her rights.

92. Mrs. Campagna requests relief as described in the Prayer for Relief below.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. For damages, the full amount to be determined at trial;
2. For punitive damages in an amount to be determined at trial;
3. For attorneys' fees and costs as may be recoverable in connection with this suit; and,

/ / /

/ / /

/ / /

/ / /

4. For such other and further relief as this court deems just and equitable.

Dated this 8th day of April 2021.

H1 Law Group

_____
Jill Garcia, NV Bar No. 7805
jill@h1lawgroup.com
701 N. Green Valley Parkway, Suite 200
Henderson NV 89074

*Attorneys for Plaintiff*